My name is David Zugman. I represent Petitioner Repellent. Carl Webster, if I could have a couple minutes at the end for rebuttal, that would be great. As I said in my briefs, this case divides nicely into the procedural and substantive errors. In light of Day v. McDonough, I don't really think there's a whole lot of profit in talking about the procedure. It's pretty obvious that the district court made a mistake by not giving Mr. Webster notice and an opportunity to respond. And because that's the case, and it's going to go back down to him, probably should settle the substantive issue of whether Mr. Webster's citation to In re Lynch was sufficient to exhaust his Eighth Amendment claim. Do you think there's a short part to this? Well, I mean, you mean ultimately to get relief under as an Eighth Amendment violation? To get back to the district court. Well, I don't think so, because I think that notice and opportunity to respond, I mean, that just sounds like a bedrock. You've got to give him a chance to answer. And Mr. Webster has never had a chance to answer the district court's objection about exhaustion. So while I agree that if this court were to agree with me on exhaustion, we could also put to bed the, you know, inquiry that the district court would conduct upon remand. And I think it's — I'm hoping that it's pretty clear that there's no substantive procedural or really meaningful difference between California's prohibition of cruel or unusual punishment and the Eighth Amendment's prohibition of cruel and unusual punishment when it comes down to grossly disproportionate sentences. And that's what we have here. I mean, Mr. Webster — I mean, what difference does that make? I mean, let's say they were identical. Well, under the — If you — he certainly can request for relief under State law and not under Federal law. He can request for relief under Federal law and not under State law, even if the relief were identical or even the provisions were identical. I think that Baldwin v. Reese answers that, because if that position were correct, then there would be no — He had a developed ineffective assistance of counsel claim in his State opening brief, but he didn't put it in his petition for review to the Oregon Supreme Court. And the Supreme Court, while saying, look, you know, a trial court is not required to read through the record to find the, you know, exhaustion issue, said, if it's the identical standard, if they're really talking about the same thing, then that would be a fair point, which is why the Supreme Court remanded to see if Oregon's standard for ineffective assistance was identical to the Federal's. Counsel, counsel, I have a question for you. I had something to do with that Reese v. Baldwin and then Baldwin v. Reese, because I think the Supreme Court was giving me lessons when they reversed me. But I don't recall in that opinion that they said that you can exhaust if you show a State standard is identical to the Federal. So do you have a citation of the language? I do. It's in my reply brief on 20 and 21, and I believe it's Baldwin v. Reese. It's on page 34 of the — yeah, page 34 of the Supreme Court reporter on that. So I know they remanded, and I know that's what — Where on page 34 are you looking at? I'm not referring to my ER. I'm referring to the pinpoint site in Baldwin v. Reese. I understand. But as you know, Supreme Court reporter pages have a lot of words on them. That's correct. Okay. And I was hoping that you would give us something. I mean, the last sentence, I believe, is the remand portion, which — I mean, there would be really no purpose in remanding it if it were correct to say that the fact that ineffective assistance is identical under Oregon law as it is under Federal law, there would have been no purpose in the remand if that was of no import. If that was an irrelevant question, there's no reason to remand. You just dismiss it out, and it's done. But they did remand. So you're looking to me for the pinpoint site? I am looking to you for the pinpoint site, yeah. I don't have my highlighted version. Pardon me? Counsel, are you saying they left that issue open? Yeah. Or are you saying that the Supreme Court decided and said that if a state standard is identical to the Federal, then you have exhausted — because I don't recall them saying that. They definitely did not say that. I'm asking about — They definitely did not. You're right. They didn't say that. Initially in your argument, I thought you said that the Court had said that. Well, I said they remanded. I said they remanded Baldwin v. Reese to this Court to determine whether those two standards were identical, because the petitioner didn't raise that argument below. He didn't say, well, look, I have exhausted this because the Oregon standard is exactly the same as the Federal standard. He said that — he wanted to present that at the Supreme Court level, but he hadn't — Do you have any copy of Baldwin v. Reese with you? I don't, unfortunately. It is cited extensively in my reply brief, and it is quoted — I mean, I quote directly from Baldwin v. Reese. And it's — I mean, there — I asked you a question. Yeah. I don't have a copy with it. Okay. You came to court, so with your key case, you don't have it with you. Well, I don't think that's my key case, though. Well, it's a case we are asking questions about right now, and we are asking you to give us — you know, to help your client, to give us some language from the Supreme Court opinion. And if you want to check with your briefs or whatever you have, it's a little thin to come to court without having a — Would you like to borrow my copy of Baldwin v. Reese? I wouldn't. It's embarrassing. Here you go. I'm not trying to embarrass you. I'm really just trying to — I would like an answer to your question, and I would like — I'm sure my colleagues would like an answer to your question. Just take it with you and take your time. Don't worry about the clock. I think this is important, and I think you need to give us your best shot as to what the case says. Okay. How about this? I'm looking — it looks like page 6, because Your Honor has the slip copy. However, the Ninth Circuit did not address this argument, the argument being the organ standards for adjudicating state and federal inadequate ineffective appellate assistance claims are identical. The Ninth Circuit did not address this argument, and our reading of the briefs filed in the Ninth Circuit leads us to conclude that Reese did not seek the consideration of that argument in that court. And they reverse, and they send it down. It's this page. So insofar as we understood you to say earlier the Supreme Court had ruled on this, we must have misunderstood what you said. I said they remanded it. I said — and that wouldn't be of any — there would be no reason to remand it. Why don't you answer my question? Insofar as we understood you to say the Supreme Court had ruled on this, we misunderstood. I didn't mean — No, no. I'm not accusing you of anything. I thought you might have said that, but often speech is imprecise. I just want to know what your position is. The language you've read from Reese, and if I understand Judge Gould's — the input of Judge Gould's questions, is that the Supreme Court involvement sent this back to us. So I thought it was — I think perhaps a fair way of phrasing it, that they saw this was an issue that was not foreclosed and that might be viable, but not one they decided and one that they sent back to us for initial consideration. Right. Do you think that's a fair statement of what you read Barnes will say? Yes. Okay. Okay. So I must admit, Judge Gould, I did not remember whether you addressed this issue in the remand opinion. I was trying to remember that myself. I don't — I'm not recalling that right now. I sometimes write opinions, and the next week I can't remember what I said either. It must be age or too many opinions. But let me ask you, counsel, do you think the Baldwin opinion on remand dealt with this issue? I don't — I did read the remand opinion, and I don't recall it dealing with that issue specifically, but I think that there was a distinction between Oregon and Federal law. I think Petitioner, while he might have had an argument were the standards really identical, I don't think they were identical. So the situation of identical standards I think it's fair to say is unresolved in this circuit. Yes, I think that's fair to say. Okay. And your position is that the California — that we ought to grab the bull by the horns and decide that issue in this case in your favor because the standards are exactly the same? Well, I actually quoted Your Honor extensively in the reply brief in the Johnson opinion about what stare decisis is. I'm not making this stuff about Lynch up. It talks all about the Eighth Amendment standard, and it's the Eighth Amendment analysis about gross disproportionality is part and parcel of why the California court said, hey, look, gross disproportionality is banned by the Eighth Amendment. We should ban it, too. And it's been cited. Lynch has been cited for the purpose of saying the Eighth Amendment violates or prohibits grossly disproportionate sentences. That's the Mantagna's case that's quoted in my brief. So California thinks that Lynch decided this. I think we should defer to California. And they say Eighth Amendment, it's raised in In re Lynch. Well, let me ask you this. Lynch was 1972, and there has been a lot of Eighth Amendment law from the Supreme Court of the United States since then. Do you read Lynch's sort of hitching California law to California law forever or until further notice, let's say? Not forever. But essentially until the California Supreme Court says otherwise, basically hitching it to U.S. Supreme Court law, no matter where it takes you, and essentially adopting federal law for state law purposes for all future cases? Yeah. I think that's a fair statement to say that Lynch finds that a sentence of life for a second offense of indecent exposure is always going to be disproportionate. And it would be my position that 25 years for $80 worth of cocaine is always going to be disproportionate. But, you know, I don't. Even if he was an axe murderer and had been miraculously been given a second chance after spending many years in prison? Yeah, he probably had a good lawyer, I suppose. It is true to say you can always come with a parade of horribles about how it's a really evil person. Well, when you use words like always, you know, that's an all-encompassing term. It almost invites that kind of thing. I'm comfortable with that. I mean, you can say that bad things can come to axe murderers or whoever the particular monster is, and they deserve whatever it is they get, but it doesn't change the fact that 25 years for ---- But we're getting into the merits. We're still talking about exhaustion. Correct. Okay. Do you want to save some of your time for ---- I would, but I've gone over, so however Your Honor's wish. You know, we took a lot of your time. Do my colleagues have any questions before you sit down? No. If not, we'll hear from the State, and we'll give you two minutes for rebuttal. Good morning, Your Honor. Kevin Vienne, the Deputy Attorney General for Respondent and Appellee in this matter. I'd like to address three issues, and I'm happy to do it in whatever order the Court does, but first of all, the question about whether Mr. Webster exhausted his federal claim in the California Supreme Court. Second, the issue about whether California and the California constitutional standard on cruel or unusual punishment is identical to the federal standard. And finally, the application of Rule 4, and what I think is now phrased as, or is phrased by appellant as a requirement that a Rule 4 dismissal always requires notice and opportunity to be heard, that is, that Rule 4 no longer permits summary dismissal. Why don't you start, I mean, since you asked for preference, my preference would be to deal with the second issue since we spent some time discussing that with the opposing counsel, but by all means, you should discuss all of them. Very well, Your Honor. I'm happy to start with the second issue. Are the two constitutional provisions identical, or were they perhaps more pertinent? Were they identical at the time that the petition for review was submitted by Mr. Webster's counsel? I believe, and I think it's clear, that they are not identical. So even if the – even if this Court were to determine that the issue left over – I think we know what the consequences are of that not being identical. Why don't you tell us why they're not identical? What do you make of that case, Lynch, that counsel says hitched California cruel and unusual punishment law to Federal law forever? I believe that is a misinterpretation of what occurred in Lynch. In Lynch, the California Supreme Court was addressing this issue. Is there a proportionality principle of some sort, or is there some content to the California constitutional prohibition against cruel or unusual punishment that addresses something other than the method or means of punishment? That is, is there some room in the California constitutional provision for an analysis of the amount of punishment that's awarded for a given crime and to a given defendant? And while it is true that in Lynch the California Supreme Court referred to Federal constitutional provisions and cases applying that constitutional provision, they also referred to the development of the law in other states, sort of a parallel or similar development of the law in other states. So I would assert that Lynch is quite simply, at the end, an interpretation of the requirements of the California Constitution. Kennedy, informed by these other cases interpreting other provisions in other jurisdictions or similar provisions in other jurisdictions? Certainly informed. Yes, I agree with that, Your Honor. But not — but simply interpreting the California Constitution. A year later, in Dixon, the California Supreme Court refined its analysis of Lynch, and Dixon remains the law in California. Dixon added or added a gloss to Lynch that's important. It looks — under the rule in California from Dixon, the rule established by the California Supreme Court, courts addressing a question of the California constitutional provision look not only at the penal code offense and the sentence, but also at such factors as motive, method, the involvement of the defendant, which was the critical issue in Dixon, prior conduct, and personal characteristics, such as age. There has been, as well, as Your Honor noted or inquired, further development of the federal constitutional requirements since the early 1980s. And in context, that development was terribly important for this case, because the petition for review was filed in 2004, I believe. I recall about July 2004. In the preceding year, analysis of the federal constitutional provision as it applied to recidivist sentencing in Ewing v. California drastically, and in fact for Mr. Webster, probably completely foreclosed any chance of success under the federal constitution. And that explains the way the issue was drafted in the petition for review. Counsel for Mr. Webster set forth the federal constitutional provision, then quoted the California provision to demonstrate that it is not identical, that it uses the word or instead of and, and then went forward to say, not that the California Court of Appeal erred in applying the federal constitutional standard, but rather quite expressly that the Court of Appeal erred in applying the state constitutional standard. So just like Peterson v. Lampert, and just as the district court recognized in this case, counsel was appealing to the California Supreme Court, trying to get their attention on the broader or more lenient standard under the California Constitution, or at the very least asserting that there was a more lenient standard, and that provided the basis, the avenue, the requirement for relief for her client, Mr. Webster. Counsel, in this case, though, Mr. Webster was pro se. Shouldn't he be given some leeway? Mr. Webster should be given some leeway. Of that, there is no question in this circuit, I think, throughout the nation. But the issue is not whether Mr. Webster gets more leeway. The issue on exhaustion is whether his counsel gets leeway. And in Peterson, this Court said quite clearly that counseled petitions in a state court need not be given the lenient treatment in the state courts that are given to pro se litigants. In fact, with regard to counseled petitions, this Court has described the requirement as to specifically raise the issue, to state it clearly, or as was stated in Galvan, the case that was relied on by the District Court, with some literary flair, the Court said that interpreting those petitions or drafting those petitions is not like writing poetry. It's simple enough. If you want to raise the federal claim, you quite simply say in the California Supreme Court, under a separate issue heading, that the lower court erred because its decision violates the federal constitutional provision, and that didn't occur in this case. And the citation to Lynch doesn't solve it. What is the correct remedy? I assume I would agree with you on that. Was the District Court correct in dismissing? And granted leave to go and try to exhaust? On that, I have two responses, one fairly specific and one more general. The specific response would deal with those cases that were raised by Appellant in his briefs. In this circuit, Boyd and Herbert, and Herbert, I think, relied on a Second Circuit case called Acosta, in which, and also in his reference to supplemental authority in Day v. McDonough, there is a line of cases where a requirement for opportunity to respond has been established in this circuit, under Day, in the United States Supreme Court, under Acosta. Those cases have addressed, at least my review of them, those cases have addressed largely two issues. One is the issue, is where the District Court dismisses a case for a procedural default. That's Boyd. And the other is where the District Court dismisses a case on the basis of a violation of the statute of limitations. And there are cases, I'd say there is established precedent that in those circumstances, the District Court must give notice and an opportunity to be heard. This is a different circumstance. And the reason this is different is because this is not a procedural default or it's not a statute of limitations violation, which are affirmative defenses to be pled and proved by the State. It is, on the contrary, something that is jurisdictional or nearly jurisdictional under the statute. That is, the District Court cannot grant relief on an unexhausted claim. And under Rule 4, if it can see from the papers, and in this case it could see from the papers that the claim is there's nothing to be gained. Well, however, counsel, isn't that the main point in day? I mean, here you've got the court dismissing for failure to raise the federal claim, failure to exhaust. But if you don't give notice, if you don't give the person the opportunity to come before the court, maybe the court could be persuaded at that point in time that, oh, maybe this has been exhausted. In response, Your Honor, in your response, I would make these two points. Mr. Webster has the opportunity to do to he does get notice and an opportunity to be heard. That is, he could have asked for reconsideration. He could have filed a motion in the District Court. Or he is being heard now on the merits of his exhaustion issue by appeal. But there is another, there's another. That was the point of my question to oppose the counsel, whether there is a prejudice requirement. Because if there is, of course, he's had a chance to be heard here. And if we can't make out the claim, if he doesn't win on exhaustion here, then there's no point in sending him back. Yes. So is there a prejudice requirement? I think the requirement is quite simply, was the District Court correct on exhaustion? And exhaustion, I think, in this context. But there is a procedural violation. I see. You dispute there is a procedural violation. And maybe there is not, because Rule 4 may well be different. So I'm not saying there is. But assuming there is a procedural violation, is it sudden death in terms of reversal? Or is it, do we say, okay, we look at what would have happened had he got the chance to respond? And among the things we look at is the fact that he had a chance to respond here. And so anything he would have told the District Court, we already know. And if we can't be convinced it would make any difference, there's no point in sending him back. I think that would be your position. I'm just wondering whether the procedural violation has a harmlessness component at all. I think it does for issues such as exhaustion or for dismissals under Rule 4 where there's clearly a violation of the merits. I think it's an open question whether there is a prejudice requirement under cases like Boyd or Acosta where the issue is statute or Day where the issue is statute of limitations. I don't believe it's resolved. I would say that an appellate court should require prejudice if it has to make that decision. But I don't think this Court has to reach that in this case because the context is different. It's not procedural default or statute of limitations. I have actually asked you a slightly different question. You answered the Day question, which is fine. I have actually asked a slightly different question. That is, assuming you're right on all those things, was the District Court correct in dismissing or should it have held the case in abeyance and granted leave for a Petitioner to go back and try to exhaust the State court? It may make a big difference in this case. That could make a difference. And it could make a difference in a case, for example. I think not in this case because if there were a mixed petition, if you understand the distinction. I know about mixed petitions. I'm wondering if Petitioner might. I believe. Does the District Court have discretion to hold in abeyance and grant leave to try to exhaust? I don't know the answer. I don't think that's resolved. They might have if it had been requested. Doesn't that then kick back in the question of homelessness? If we can't exercise the District Court's discretion, we can't. I mean, if the District Court has discretion, this is not discretion that we can exercise. So it's not like we can look at it and say he should or should not be granted leave to exhaust. This is something that District Court would have to do. So if we find a procedural violation, this might well be the prejudice he suffered, not having a chance to have the District Court exhaust, exercise discretion on it. Yes, Your Honor. Thank you for, I apologize for misunderstanding earlier. Thank you for explaining to me. I think that the law is, although I'm not sure that any case has addressed it in this context, I don't believe the District Court has that sort of discretion in a totally unexhausted petition, which is essentially what this District Court faced. That is, there was no exhausted claim. There was nothing that could properly be before the District Court for the retention of jurisdiction. And that leads me to my second and more general point that I hope to make with regard to what the District Court did in this case and why I think it's both pragmatic and good. In this case, when the District Court dismissed without prejudice what is a wholly unexhausted petition, that is, one claim that was clearly not Federal addressing California statute and one claim that had not exhausted the Federal claim, when the Court did that there were five months remaining in the statute of limitations. And, well, actually we see that Mr. Webster was quite capable of moving with alacrity because within a week he'd filed a notice of appeal. I think within a week, roughly that period of time, he'd filed a notice of appeal in the District Court. If he had instead followed the direction from the District Court, which is you have no exhausted Federal claim before this Court, then there would have been no need, no cause for holding his matter in abeyance, because there was plenty of time for him to return to the State court and exhaust as necessary. Kennedy. How long does it take to get a postcard, right? Well, actually, sometimes it takes far too long, and I can't explain that to this Court. But it doesn't take long for him to file his petition, clearly specify that he's raising the Federal claim. And would the petition then trigger a statutory tolling, I believe, Your Honor? Statutory tolling. Of course. And where would he have done it, Superior Court, Supreme Court? Well, he could have achieved tolling in any of the California courts. Eventually, he had to take that matter to the California Supreme Court to achieve exhaustion. But his tolling, he could have begun in the Superior Court, although it would not have been necessary, and he would have had tolling provided he proceeded with diligence throughout the California court system. Okay. Thank you. Those are more questions. Thank you. Thank you very much, Your Honor. Good morning. I'll give the petitioner's counsel a couple of minutes for rebuttal. Judge Kaczynski, I have a question for Mr. Zuckman. This relates to your argument about Baldwin. Uh-huh. I understood you initially to make a statement that the Court had decided that identical standards were enough, and then afterwards I understood you to say, no, I didn't mean that, but they remanded it and left that open on remand. I've looked back at Baldwin. I don't see the Supreme Court remanding. So why don't you take a look at that opinion. It's the last page. If Judge Kaczynski warned you. I reread it. It's the last page. It's the second to last paragraph. Yeah, I'm looking at it. Give me that. You want the page back? No, it's okay, Your Honor. I recall the language. Read me the language of the paragraph. Your Honor, I guess I do need the page back. My memory is not that good. You do need it because I'm looking at it. And as I see it, the Supreme Court, let me wait until I have your attention. Mr. Zugman, as I read it, the Supreme Court said the issue was never briefed in the Ninth Circuit. And so we hadn't addressed it. And it was only raised before them. So they exercised their discretion to view it as waived. And then the final paragraph is that the judgment of the Ninth Circuit is reversed. They did not remand. We have no remand opinion. Your Honor, the way I read this, and your Honor is right, your reading is correct, that it is the next paragraph is the waiver rule. The way I read the paragraph and why it got me so excited was that if it were the case that identical standards didn't matter, then this paragraph is superfluous. There would be no reason to have this paragraph if it really were the rule that if you say state, even if the standards are the same. All they were saying there was they weren't reaching the issue. But they did not remand it to us on that issue. I agree, Your Honor. You're right. So your statement, I believe your statement was misleading when you first, as I believe, implied that the Supreme Court had decided that rule. And then second, when you said they remanded for us to consider it. It was wrong. All they did was say they weren't reaching it because it was waived. So their opinion is no precedent on it. Right, but it's. Have you looked at whether the Ninth Circuit, have you looked at whether the Ninth Circuit in any subsequent case has addressed that very issue? I have not, Your Honor. My purpose in citing Baldwin and why I said it was that Baldwin says that there is something at least. They didn't reach the argument of whether identical standards would, you know, mean that one would exhaust the other. It's correct to say. Baldwin doesn't foreclose that. But what you're telling me is you don't know right now whether any subsequent Ninth Circuit case has either adopted or rejected that theory. If there were such a case, I would have found it. But I don't believe there is such a case. I think that there really is. I remember looking up the Oregon law just to see if there was any merit to the position of petitioner. And I remember finding differences. But, you know, it's true that it was a it was a flourish by me. I didn't mean to mislead the court, but it's not like this issue. I don't want to dwell on it. But from my perspective, I think it's helpful if you can be as precise as possible in your argument. And don't say please don't tell me there's a remand if there isn't a remand. I try to be precise, Your Honor. It was an honest mistake. It's always good to bring cases to court. I accept that. Okay. Are there any other questions for Mrs. Zugman? If I can just say one thing briefly. This guy got 25 years for $80 worth of cocaine. And there is something terribly wrong about saying that there is some magic words approach that he didn't say cruel or unusual. He said cruel and unusual or vice versa. That's just wrong. He deserves this. I mean, if his claim doesn't have merit, he'll lose anyway. He at least should have a chance to determine whether his claim has merit. Thank you. Okay. Thank you, counsel. Cases are, you will stand submitted. We will next hear arguments.
judges: Kozinski, Gould. Martinez